16-2097 R.F. Muell v. Stable Could be attorneys for the coach please? You all can have a seat. Good morning. How are you? Good to see you. Matt Sider for plaintiff. SIDOR. Okay, Mr. Sider, we usually give 15 minutes. Did you want to reserve some of that for rebuttal? If I could. Okay, how much? Five minutes. Five minutes? All right, counsel, come on up. Brian Sharpe on behalf of the Defendant's Advocacy. S-H-A-R-P-E. All right, Mr. Sharpe, 15 minutes for your side as well. Thank you. All right, Mr. Sider, you can proceed. If you may please the court. Good morning. Good morning. I represent Arthur Chmiel, and all of this is in the pleadings, but I'll set forth some of the facts for you very briefly. He's a minority shareholder in two McDonald's restaurants. One is named Rosemount No. 1, Inc., and the second is Stabile Enterprise, Inc. I'll refer to those as Rosemount and Bensonville stores. We are alleging breaches of fiduciary duty and corporate waste by the sole director of the stores and majority shareholder Dennis Stabile. We filed a derivative action on behalf of the stores against the defendants in this case. Mr. Sider, I had a question with regards to the derivative action. Wasn't all of that governed by the operating agreement between your client and Stabile? All of it loosely, I would say. There's a shareholder's agreement, and then there's a buy-sell agreement, which governs the buyback provisions, pursuant to which payments for the shares were tendered during the course of this litigation. And that was a pretty thorough or extensive agreement. Would you agree with that? I would say extensive in terms of buyback, limited to buyback only. And in that entire agreement, does it say anything about the valuation of the corporation, how that is going to be determined prior to his payoff coming? Yes, there's a calculation. Okay. And they abided by that calculation, is that correct? They abided by it, but our contention is they used numbers that were not accurate. So in this agreement, there's nothing in there which would provide for a scenario which you're claiming that you're now facing, that they diminished the corporate assets and therefore the buyback provision was not based on real numbers, correct? Correct. Okay. So it's not in the agreement. They've abided by the agreement. What basis do we have to find that the trial court erred in decisions? Well, I think it's a matter of first impression in terms of when he ceases to become a shareholder. There's no case law in Illinois that says he ceases to become a shareholder. Well, if you look at alternate jurisdictions, there's numerous cases that provide for circumstances where the minority shareholder retains shareholder status while issues are being resolved between the parties, regardless of whether or not there's a buyback provision. But that's a separate issue. That's on whether his claims were moved, and as soon as they tendered the payment, he's out of the box. That's a separate issue to what you're alleging on this claim, that there should have been some way for him to allege that the corporation's assets were being diminished prior to the calculation of what he was owed, correct? Sure. Okay. They're tied together, but yes. Right. So if the agreement is what the calculation is based on, how do we find that the trial court erred in saying, well, they abided by the agreement. The agreement doesn't provide for when there's a discrepancy in the corporation value, correct? No, it does not. Correct. Okay. So you're asking us to go outside of that agreement and find the trial court erred in finding that she couldn't go outside that agreement? Yes, Judge. Okay. And if you look at some of the alternate jurisdictions, which, by the way, just going back, one more relevant fact, I believe, is that we did not have access to the books and records until after termination occurred. In the agreements themselves, they say documents shall be executed and the party shall cooperate in determining the value of the shares at the time. Let me just grab them real quick. At the time the buyback provisions are effectuated, and let me look at that provision as well very briefly here. Let me take a step back and maybe the answer to the question is actually, your previous question is actually changed because Paragraph 13 on the buyback, and there's an analogous Paragraph 13 in the shareholder's agreement, provides that whenever the corporation shall, pursuant to this agreement, be required to purchase shares, each shareholder and the person or representative of any deceased shareholder shall do all things and execute and deliver all papers as may be necessary to consummate such purchase. If the minority shareholder is an officer or director of the corporation, he or she shall resign simultaneously upon his or her share or transfer of the shares as provided herein. Now, that doesn't necessarily say we shall go back and look at what we're attempting to look at here, but I think it does address possibly executing and delivering all papers necessary to consummate the transaction, which could involve going back and looking at what we're complaining about, the breaches of fiduciary duty. Were you precluded from flushing out that claim by the trial court's dismissal? I was precluded because the dismissal was with prejudice. I filed a motion to reconsider asking that the dismissal be modified to provide that the dismissal be without prejudice. That motion was summarily denied for failure to state an adequate basis, according to the trial court, as to the reasoning behind the motion for reconsideration, so we never were able to argue that point. Did you want to amend your complaint at that point, too? I did. And did you tender it? I did not have an amended complaint because at that point we'd already been dismissed without prejudice. So I was kind of stuck. We were kind of stuck. Well, did you request that you be given that opportunity? In the motion to reconsider, we did. To amend? Yes. All right. And she didn't allow that? No. The motion was denied. And you said that one of the issues here is really an issue of first impression, and that is whether this person remained a shareholder after the termination of his employment. Yes. So we believe it's a matter of first impression. In Illinois, other courts have similar issues with when the shareholder ceases to become a shareholder, and there's exceptions carved out. Does this fit into any of those in the other jurisdictions? Not specifically. Well, what would you say then would be the basis for carving one out? Or does it fit into one somewhat that's in existence now? I think it fits into numerous of them. If you look at Coleman v. Taub, which is a Delaware case, there's numerous scenarios where a derivative claim would not be mooted. It held that claimants, quote, ultimate obligation to relinquish must be preceded, of course, by various actions on the part of each party. An evaluation of plaintiff's shares is closely linked to other factual and legal questions the plaintiff will be obligated to litigate, and the court is free on remand to proceed with the contractual issues in that case. We may or may not have contractual issues here. I didn't get to that point because we were denied our request to amend, but we have definitely producer issues that I think should be addressed before the calculation can be performed. Well, what about the cases that go against you? What do they say? And how do you respond because that's what your opponent will say? Yes, Judge. Justice, sorry. I don't think the cases cited by defendant actually are on point because they don't argue that the calculation was done improperly. Numerous of them argue or pertain to allegations that the buyback provision was simply unfair or otherwise they don't get into underlying issues. And I'll reserve a bow on that issue, but I don't see it. If you look at it, numerous alternate jurisdictions also provide for specific safeguards where a derivative suit is brought in bad faith. So, for instance, if someone, it's not here in Illinois, but if someone in an alternate jurisdiction brought a breach of contract derivative action in Delaware, and I'm not saying Delaware is one of those states, but there can be a fee award if such a claim has been brought solely to kind of. Did the judge kind of say that when she said you could indefinitely hold the corporation hostage? She did say that, and I think that that would be addressed if a statute existed, as they do in some alternate jurisdictions. I don't think there is. Let me take that point and also say the buyback provision itself, the intent behind the buyback provision is to come up with a reasonable calculation to separate from the company. It doesn't take into account the reason, the purpose behind it wouldn't take into account or would assume that the calculations are going to be based on correct and non-fraudulent, non-wasteful numbers, so I think that point can go both ways. So, in Montana, there's a bond that's required to pursue the derivative claim, and... Was there anything attached to your response to the motion to dismiss with regard to the devaluation of the corporate assets? Was there anything that you were pointing to as evidence that those numbers were incorrect? Or had you not gotten to that point? I think I referenced the complaint, and in the complaint is contained, and I'm sorry I didn't bring the response to the motion with me, but I believe I just referenced the complaint, and in the complaint was attached, or allegations were made as to an over-a-million-dollar variance, use of assets of the corporation to pay off defendant's personal obligations, et cetera. There was an extensive list provided, if not attachments themselves. Okay. Defendants cite Dolezal for the proposition that shareholder doesn't retain standing once a buyback is effectuated. In that case, the party seeking, was seeking a dissolution of the corporation and did not contest devaluation as we're dealing with here. So that Illinois case isn't on point. But of note in that case, the matter did proceed to trial on a counterclaim by the corporation against the minority shareholder, despite the fact he was no longer a minority shareholder for breach of fiduciary duty. That was incurred at the time that the individual minority shareholder was and remained an employee slash minority shareholder. So I think if the matter is remanded, a plaintiff may have a cause of action, and if there's a cause of action that can be garnished or garnered from the pleadings, then it would be a breach of or abuse of discretion to dismiss with prejudice and not allow a repleting. So I think that's all I have for now. And if you have more questions. I'll stay. Thank you. All right. Thank you, Mr. Snyder. Mr. Shirk. May it please the court. Brian Shirk on behalf of Defendants Appellees. Arthur Schmuel got exactly what he bargained for. In fact, he got more than what he bargained for. His attempts to circumvent the shareholder standing requirement are not permitted by Illinois law, and they're clearly an end run around the plain and unambiguous terms of the by-sell agreements. Wait a minute. Mr. Shirk, I think there's an assumption in the by-sell agreement that whosoever in charge of the corporate assets isn't going to diminish the corporate assets prior to the calculation of what he's owed. Correct? Is there an assumption there that there's going to be fair dealing? Well, there's nothing written into the contract as such, but we're not disputing the fact that the majority shareholder owes these fiduciary duties to the minority shareholder. But also, forgetting the fiduciary duty, there's an assumption that the contract itself is entered into with good faith and fair dealing. That's correct, Your Honor. With every contract there's that implied duty. Right. So then, to Justice Berg's question, don't we then have this idea that's being raised, that there was a dissipation and waste before the calculation was made? Would that be a breach of that duty of good faith and fair dealing? I think we have two separate issues here. The argument that these claims are inextricably linked, it's not the case. We have distinct claims here. And the buy-sell agreement controls in this case. We have to look first to the language of the buy-sell agreement because the buy-sell agreements freeze the party's rights at any given moment in time, at a particular moment in time, the time of termination in this case. And, you know, as this Court is well aware, stocks go up, stocks go down on a day-to-day basis, minute by minute. So we need to affix the party's rights at a particular moment in time. And I think that's important, good, bad, or otherwise. We need to freeze the party's rights. And there's really nothing in this appeal that suggests that the mechanics of these buy-sell are incorrect or that the terms are ambiguous or somehow unconscionable. So to try to go back in time, prior to this frozen moment, I think sidesteps the clear language in the buy-sell agreements. You know, Plaintiff did not bargain for the right to participate in corporate governance beyond the time that he was an employee. So to the extent that he wanted to raise these allegations of mismanagement, he had every right to do so during his 20 years as an employee shareholder. And how would he know about that until he got the corporate valuation, which was significantly less than he anticipated it being? Well, under the Business Corporations Act, he had every right as a matter of law to access the corporate books and records. And as a matter of fact, he did access the corporation's books and records. At our oral argument on the motion to dismiss, Plaintiff represented that his client reviewed, quote, numerous documents. And there's some discrepancies in the appellate briefs, but on page 7 of the appellant brief and again on page 1 of the reply, Plaintiff states that his client came to discover this alleged mismanagement at or around the time he terminated his employment, which means that he had full knowledge of any of his claims when he did have standing to bring them. Well, he acknowledged that there was mismanagement going on. I don't know that he had knowledge of the corporate dissipation at that point. Well, I guess, you know, I read this in his brief to mean, you know, the full scope of his claims. You know, I'm not sure exactly which claims he knew or didn't know about, but the point is he had every right to access these books and discover this. And he didn't. There were no complaints, absolutely zero complaints of mismanagement throughout the 20 years that he was an employee shareholder. But don't you think he had a right to amend his complaint to include allegations that would have drawn that out a little bit more? Respectfully, I think the circuit court got it right. Oh, yeah, thank you. Mr. Schmeal is alleging classic derivative claims. And in Illinois, there is no relaxation of the direct versus derivative claim with respect to closely held corporations. The only injury that Mr. Schmeal is alleging that he suffered is a reduction of value of his shares. These are classic derivative claims, and only derivative actions are permitted in that case. And before we can get to that, we have to figure out, does this plaintiff have standing? And that's the threshold question that we must ask. He has no personal or indirect injury here to pursue the company directly. But does it change the analysis at all, the fact that he did not accept the tender? The tender is being held, I assume, in the circuit court. It's my understanding that the tender is in an escrow account right now. And to answer your question, no, whether or not the plaintiff accepts the tender is irrelevant. If the tender is correct, that's the end of the analysis. But the allegation is the tender is not correct. The allegation, anyone can say the tender is not correct. The point is we followed the buy-sell agreements to the letter. We fulfilled our end of the bargain. And I think it's important to note the language in the two buy-sell agreements. With respect to Rosemont, it states, and I'm quoting from C23, paragraph 8, the corporation shall purchase the shares of the affected shareholder within 30 days after the corporation board of directors shall have determined the value of the shares. That's exactly what we did. This gives the company the binding determination here. And there's nothing inappropriate about that, nor is there anything on this appeal that's challenging that as an unconscionable term. These are two sophisticated parties that have been in restaurant management for a number of years, each represented by their own counsel. This is a bargain for, you know, right to have finality and predictability and reliability as opposed for either party to contest these shares. Mr. Sharp, do you agree with Cider's suggestion that we're dealing in any way with the issue of first impression here? I do not, Your Honor. I believe that the ‑‑ first of all, this is black letter law in Illinois, that a shareholder must maintain his standing or her standing throughout the pendency of the litigation. The Dozol v. Plastic. How would they do that if there was a tender, though? I'm sorry? How would they maintain their standing as a shareholder If the agreement says once we tender, you're out. It doesn't matter if you accept the tender or not. We've tendered, you're gone. Wouldn't that be a way for a corporate to always avoid any type of shareholder action against them? They just tender the value of their shares and then they're done. Well, respectfully, you know, if there's a tender made, even under this Coleman case that plaintiff relies very heavily upon, that tender was the sort of dispositive factor that ended the standing. And I think that this really is ‑‑ So again, my question is, couldn't a corporation always just tender the value of the shares and defeat their standing at that point? Yes, I mean, they could. And I think that that would be akin to like a type of freeze‑out merger, maybe, which is not impermissible under Illinois law. You know, there's still a remedy here for the shareholder to gain the value of his shares. There could always be a bargain for provision in the buy‑sell agreement for like a cause requirement, which would preclude the employer from just terminating the employee for asserting his rights in a derivative action. The parties could bargain for that. There may be a cause ‑‑ But again, we're back to what our buy‑sell agreement says, and our buy‑sell agreement does not give him any of those remedies. Is that correct? That is correct, Your Honor. Those remedies are not in these two buy‑sell agreements. All right. So you're telling us that even if the major shareholder dissipates the assets, that makes no difference? Well, there's still fiduciary duties owed. And, you know, these are ‑‑ But how could he establish that if his standing is defeated by the tender? Well, the corporation still retains that cause of action, or any of the shareholders of record would still retain that cause of action. Well, if the corporation is not going to sue itself, then obviously there has to be a derivative action. Wouldn't that be correct? Yes, it does have to be a derivative action. And if there's an issue of dissipation, like to give you an example, in most cases what happens is that the major shareholders, especially in McDonald's, I've seen it throughout my life, where the major shareholder of a McDonald's corporation will have four kids in college and he'll give them each a salary of $250,000 apiece, and the minority shareholders, they have to bear up to that. Is that what you're saying? It makes no difference? No. I mean, while these minority shareholders have standing, they certainly can assert these types of derivative claims. That's not really what we have here, though. Well, there's a claim here of dissipation. I mean, should that go to its merits somewhere along the line? Again, we can't sidestep this rule of law in Illinois that's been handed down by the Illinois Supreme Court, this shareholder standing requirement. We can't relax that. And in the Smalley-Sussman case, that case affirmed that it even closely held companies. You know, the derivative requirement is what it is. We can't bring these types of direct actions, even in closely held companies. And the Sussman court, the Smalley-Sussman, this district actually allowed it. Well, how do you do it, then? Tell me how you do it. You can either contract around it and provide for, like, a delay of share transfer. You can bargain for a cause requirement. You can not resign. I mean, remember, in this case, plaintiff resigned. He actually resigned. Yeah. Which is what secured the whole obligation to them. Yes, this is not a case where, you know, the plaintiff was frozen out or squeezed out of the company or anything like that. He walked away. Yeah, but this is basically a close-held corporation, is it not? It is a small corporation. In the shareholder agreements, there were four shareholders of record. And, yeah, even in the Smalley-Sussman case. Isn't this treated differently than the cases that you've just talked about? Respectfully, no, Your Honor. The Dozel case only had two shareholders. That rule was that, you know, at termination of employment, that's the end of the line as far as a derivative claim is concerned. Even in the Coleman case, the plaintiff cites, I believe at the time there were only two shareholders. And that more relaxed rule is satisfied in this case. In the Coleman case, the rule articulated by the Coleman court is that the plaintiff will have no right to hold old top shares beyond the time that a value is placed on those shares and the purchase price is tendered. That's exactly what happened in this case. We assigned a value to the shares at that particular moment in time, and we tendered that. So even under this more relaxed rule in Coleman, it actually underscores plaintiff's arguments. Well, what case then do you suggest that we rely on to affirm your position, basically? Respectfully, we don't need to go to Coleman. We have the Dozel case decided by this district, which I think is directly on point. But there wasn't an allegation of dissipation, waste, or any kind of fraud in the calculation, was there? I don't believe there was. There were a number of claims. Well, that's why I'm asking you, what kind of – what case other than that would you suggest towards the idea that where there is this claim of waste, dissipation, whatever, that the shareholder who leaves his employment no longer can pursue the derivative claim? As I was preparing for this oral argument, I did come across a case. I didn't cite it in your brief. I did not cite it in my brief. So I don't know how appropriate it is, but it's Wheel v. Northwest Industries, Inc., 168-3D-1. It's an Illinois company. That's correct. It's not an employee situation, but the shareholder, it's a larger publicly held corporation, and they allege that they weren't able to access the corporation's books and records, and so they didn't know that there was fraud until it was too late, and even so the court refused to allow the claim to move forward. So not directly on point, but I think it could be helpful in this Court's decision. I just came across this, I think it was yesterday, so my apologies for that. But even so, we have all of these substantive things to look at. The circuit court decision can be affirmed on procedural grounds alone. We have no Bensonville by cell attached, and that's a fatal flaw. To the extent that he's disputing the Bensonville by cell agreement, it was his burden to attach this in the first place. He failed to do so. And we have a serious Rule 137 violation. We have no signature on this complaint. We brought this to plaintiff's attention. But I thought that was an electronic filing. Isn't that going to complicate this issue? Well, I know that he cites that the user manual for Cook County provides a signature in fact, but first, I don't think that negates the Rule 137 signature requirement. And second, in that user – Well, how are you supposed to do it if you're filing electronically? I think the game is changing. Yeah, that's a change. I wouldn't go where you're going there. Respectfully, I will not go there. So for these reasons, I ask that the circuit court's decisions be affirmed. If there are no other questions. Thank you, Mr. Chairman. Thank you. Mr. Sider. Thank you. Plaintiff, our defendant references this case as being similar to the situation of a freeze-out merger, and Coleman actually dealt with that. In Coleman, Delaware bestows upon minority shareholders the right to remain a shareholder until elimination serves a valid bona fide corporate objective. So in that specific instance, in freeze-out mergers, there's exceptions for that. And we're looking for something similar to be addressed here. So we ask that the decision be overturned as to the dismissal itself as well, or in the alternative that the dismissal be revised to provide that it be without prejudice, allowing plaintiff to replete if that's on the table. Thank you. Thank you, Mr. Sider. We'll take the case under advisement. Thank you, gentlemen. Thank you. All right.